453

Argued and submitted July 17, 2003, affirmed March 10, 2004

Walter P. HITCHCOCK,
Trustee of the Angelini Trust;
Paulette Botti and Charles Botti,
Trustees of the Botti Family Trust;
Alexander Briones; Dominador Briones, III;
Donato Carreta; Alice M. Carreta;
Frank R. Delosa; Clella Delosa;
John M. Doyle; Robert Galligani;
Diane Galligani; Albino A. Ravella;
Antonia T. Ravella; and Donna Reich,
Personal Representative of the
Estate of Michael J. Rush,
*Appellants,*

*v.*

Richard DELANEY;
and Dolphin Real Estate Group Investments, Inc.,
*Respondents.*

9505-02954; A117540

86 P3d 73

David J. Sweeney argued the cause for appellants. With him on the briefs were Paul G. Dodds and Brownstein, Rask, Sweeney, Kerr, Grim, DeSylvia & Hay, LLP.

Lynn R. Nakamoto argued the cause for respondents. With her on the brief were Lynn R. Stafford and Markowitz, Herbold, Glade & Mehlhaf.

Before Haselton, Presiding Judge, and Deits, Chief Judge, and Linder, Judge.

LINDER, J.

## LINDER, J.

In this action for, among other things, breach of contract and unjust enrichment, the trial court originally found plaintiffs[1] (who are the owners of a mobile home park) liable to defendants Dolphin Real Estate Group, Inc. (Dolphin) and Richard Delaney. The trial court accordingly entered a money judgment in defendants' favor. While plaintiffs' appeal of that judgment was pending, they paid Delaney, who turned the money over to Dolphin. Meanwhile, we resolved that first appeal. In doing so, we determined that Delaney was not a proper judgment creditor and that the amount of the money judgment imposed was too great. *See Angelini v. Delaney*, 156 Or App 293, 966 P2d 223 (1998), *rev den*, 328 Or 594 (1999). On remand, the trial court removed Delaney as a judgment creditor and ordered Dolphin to reimburse plaintiffs for the excess amount that plaintiffs had paid to satisfy the original judgment. Plaintiffs now appeal for a second time, arguing that Delaney should have been liable to plaintiffs for that excess. We affirm.

The facts are not in dispute. Plaintiffs purchased the Vista Park Mobile Home Estates (Vista), a mobile home park in Hermiston, employing defendant Dolphin to manage the property. Dolphin was operated by plaintiff Charles Botti, defendant Delaney, and a third principal, Konrad von Emster. Vista experienced cash flow problems and, as a result, plaintiffs ultimately authorized Dolphin to borrow funds from third parties to operate Vista. To obtain funds to pay off the promissory notes, Dolphin established a line of credit with Dolphin Mortgage Co., a related entity. That line of credit was secured by the personal residences of Delaney, Botti, and von Emster. When Dolphin Mortgage later went out of business, the loan was "rolled over" to another entity, Investek Financial Corp., which obtained additional promissory notes from Delaney and Botti, also secured by their residences. Plaintiffs eventually dismissed Dolphin from its position as the manager of Vista, and defendants Dolphin

---

[1] Several parties in the original caption are now deceased, and plaintiff Hitchcock represents the interests of substituted plaintiffs.

and Delaney demanded that plaintiffs repay the Vista-related loans.

The original judgment is not at issue in this appeal but did lead to the dispute that resulted in the current appeal. Plaintiffs sought to quiet title in Vista against potential adverse possession claims by defendants Delaney and Dolphin. Defendants counterclaimed for, *inter alia*, breach of contract and unjust enrichment. The trial court granted plaintiffs' motion for summary judgment to quiet title in the land and, following trial, entered a money judgment on the counterclaims, along with prejudgment interest and attorney fees, in favor of defendants Delaney and Dolphin. As noted, plaintiffs appealed and, while their appeal was pending, plaintiffs tendered payment in satisfaction of the judgment with three checks. The checks were made payable to Delaney, despite escrow instructions and a letter to plaintiffs directing that they be made payable to Dolphin. Immediately on receiving them, Delaney endorsed the checks over to Dolphin.

Plaintiffs appealed that judgment. We reversed in part and remanded. *Angelini*, 156 Or App at 296. Among other grounds for our disposition, we agreed with plaintiffs that the trial court had miscalculated the amount of the money judgment and that Delaney was not properly a judgment creditor. *Id.* at 300-07. On remand, plaintiffs filed a supplemental complaint seeking various forms of relief, including restitution of the overpayment from both Dolphin and Delaney. The trial court recalculated the judgment to a lesser amount (resulting in an overpayment by plaintiffs), removed Delaney as a judgment creditor, and entered an amended money judgment naming Dolphin as the sole judgment debtor for purposes of the overage amount.

■  In this second appeal, plaintiffs assign error to the trial court's determination that Delaney is not a judgment debtor for purposes of the overpayment. Plaintiffs argue that they are entitled to repayment from Delaney on two theories. First, plaintiffs assert that a judgment creditor who receives payment pursuant to a subsequently modified judgment is liable as a matter of law for repayment of any overage regardless of the circumstances. Alternatively, plaintiffs argue that

Delaney is liable for repayment under principles of equitable restitution. We consider each argument in turn.

In arguing that Delaney is liable for the overpayment as a matter of law, plaintiffs rely principally on *Coker & Belamy v. Richey,* 108 Or 479, 217 P 638 (1923), and *Arnold v. Arnold,* 193 Or 490, 239 P2d 595 (1952). Neither case, however, establishes an absolute right to repayment of an erroneous judgment as a matter of law. The sole issue presented in *Coker* was whether a party who satisfies a judgment that is later vacated must pursue an independent action for the money's return or may seek the money's return in the same action in which the original judgment was imposed. 108 Or at 485. In holding that an independent action was not necessary, the court in *Coker* preliminarily observed that a party who has paid a judgment that is later vacated "is entitled to have restored to him all that he lost under the erroneous judgment; and the party to whom such payment was made is obliged to make restoration." *Id.* at 484. As the ensuing discussion in *Coker* made clear, however, the mechanism for repayment was to seek *restitution* pursuant to conventional common-law principles of equity. *See id.* at 484-87.

*Arnold* likewise stands for the proposition that the "right" involved is the right to invoke equitable principles of restitution. There, a party who prevailed on appeal to the Oregon Supreme Court filed a motion with the court seeking "restitution" of property and rights lost under the circuit court judgment that was reversed on appeal. *Arnold,* 193 Or at 506. The court rejected the proposition that any remedy was merely "discretionary" with the court and concluded, instead, that "restitution" was available as a matter of right. *Id.* at 507. Significantly, in support of that proposition, the court cited *Lytle v. Payette-Oregon Irr. Dist.,* 175 Or 276, 286, 152 P2d 934 (1944), which applied the restitution principles set forth in the *Restatement of Restitution* § 74 (1937) to determine the scope of the debtor's right of restitution under the particular facts presented in that case. *Arnold,* 193 Or at 507. Because the determination of an appropriate award of restitution depended on facts that were not a matter of record, the court in *Arnold* remanded the case for "such further proceedings as may be proper" instead of ordering whatever restitution might be due as part of the appeal. *Id.* at 508.

We understand *Coker* and *Arnold* to stand for a more narrow proposition than plaintiffs assert. Neither case holds that a party who has paid a judgment that is later reduced or reversed on appeal has an absolute legal right to full repayment or restoration of all things paid or lost under the judgment. Rather, those cases, and the authorities on which they rely, stand for the more limited proposition that a party in that position has a right to *restitution* on equitable terms.[2] Plaintiffs' "alternative" argument therefore frames the correct inquiry: Are plaintiffs entitled to repayment from Delaney based on traditional principles of equitable restitution?

In turning to that question, we begin with the settled equitable principles that guide the inquiry. "The basis of the restitution remedy is unjust enrichment." *Fleming v. Wineberg*, 253 Or 472, 479, 455 P2d 600 (1969). A claim for restitution based on unjust enrichment is limited to what has "actually been received and retained by the creditor for his own benefit." *Lytle*, 175 Or at 287. A benefit received and retained can consist of any form of advantage and exists, for example, where one party adds to the property of another or saves another from expense or loss. *Restatement* at § 1 comment b. But the mere receipt of a benefit is not enough. Rather, its receipt and retention must be *unjust* under all of the circumstances. *Tum-A-Lum Lumber v. Patrick*, 95 Or App 719, 721, 770 P2d 964 (1989) (citing *Restatement* at § 1 comment c). Thus, an entitlement to restitution based on a theory of unjust enrichment depends on a showing, first, that a benefit was conferred and, second, that the benefit was unjust.

We review *de novo* the trial court's finding that Delaney was not unjustly enriched and that plaintiffs therefore are not entitled to restitution from him rather than from

---

[2] ORS 19.425 (*former* ORS 19.140 (1995)) codifies the nature of the remedy that plaintiffs may pursue. It provides that, "[u]pon an appeal, the appellate court may review any intermediate order involving the merits or necessarily affecting the judgment or decree appealed from; and when it reverses or modifies such judgment or decree, may direct complete *restitution* of all property and rights lost thereby." (Emphasis added.) That provision permits an appellate court to order restitution, rather than remand to the trial court to conduct further proceedings for that purpose. *Arnold*, 193 Or at 507-08. But the plain text provides for a remedy that is equitable, not legal, in nature.

Dolphin. ORS 19.415(3) (2001).[3] Plaintiffs advance three arguments in support of their position that Delaney was unjustly enriched by his receipt of the checks. We describe and consider each of those arguments in turn.

First, plaintiffs contend that Delaney received a benefit by possessing the checks that were printed with his name because, as a judgment creditor with a valid, enforceable judgment, he not only had the right to cash the checks himself but also had the practical ability to do so. We agree with plaintiffs that the right and ability to cash the checks conferred some form of *potential* benefit on Delaney. But we disagree that any benefit, under the circumstances, actually resulted in unjust enrichment. The checks were made payable to Delaney in error. The error was not of Delaney's making. To the contrary, the attorney representing Delaney and the other defendants issued escrow instructions directing that the checks be made payable to Dolphin, rather than to Delaney. Under those instructions, Delaney was merely to take delivery of the checks on Dolphin's behalf. Delaney accepted delivery despite the fact that the checks were made payable to him in error, but he did not cash the checks, deposit the funds into his own bank account, or otherwise use them to his benefit. Rather, he immediately endorsed them over to Dolphin. In doing so, Delaney did exactly what plaintiffs, throughout this litigation, have argued should be done. That is, plaintiffs have consistently maintained that Dolphin was the only party who should be a creditor on the original judgment. Delaney's actions ensured that result, and he received no actual benefit from the checks. Thus, under the circumstances, the fact that the checks were made payable to Delaney did not result in either a realized benefit to him or an unjust one.

Second, plaintiffs argue that Delaney received an unjust benefit to the extent that Dolphin—which actually received the money—used it to pay off loans that were secured by Delaney's personal residence. In plaintiffs' view, Delaney's risk of losing his residence was decreased as a

---

[3] ORS 19.415(3) was amended by the legislature in 2003. The judgment in this case, however, was entered before the effective date of the change. *See* Or Laws 2003, ch 576, §§ 88, 90a.

result of any such payment by Dolphin, thus sparing Delaney from a potential loss or expense. Assuming without deciding that such use of the money would be a benefit to Delaney,[4] the short answer to plaintiffs' argument is that the record is devoid of any evidence that Dolphin used the funds to pay off any of those loans. Plaintiffs point to nothing in the record establishing that fact, nor has our own review of the record confirmed plaintiffs' assertion that Dolphin used the money in that way.

For their third and final argument, plaintiffs urge that Delaney's receipt of the proceeds of the judgment via a check payable to him is sufficient to show unjust enrichment regardless of how he disposed of the funds or whether he used them to benefit himself. Plaintiffs reason that a party who has paid an erroneous judgment should be able to seek restitution from the person paid and should not be put to the burden of "tracing" the funds to determine who ultimately received them and what was done with them. As an abstract proposition, we can agree that the problem of "fund-tracing" is a legitimate one to consider in assessing the equities in a case in which an erroneous judgment has been paid. The problem for plaintiffs, however, is that this particular case does not present a fund-tracing problem. Delaney did not turn the funds over to a "third party." Rather, it is undisputed that he gave the funds in full to Dolphin, a party to the litigation and a proper creditor on the judgment. Dolphin, which received both the money and the benefit of the funds, has been ordered to repay plaintiffs. We find no inequity in that result.

Finally, and of particular significance in terms of assessing the equities, Delaney's handling of the funds accomplished what plaintiffs, from the outset of the litigation, argued was legally correct—*i.e.*, that Dolphin, and Dolphin only, should receive the benefit of the money judgment. To be sure, as we determined in the first appeal, the trial court erred by making Delaney a judgment creditor

---

[4] We note in that regard that Delaney had incurred the liability on his personal residence in order to provide a benefit to *plaintiffs'* business. We express no view as to whether, under the circumstances as a whole, relieving Delaney of a liability that he incurred only to aid plaintiffs' business is a "benefit" for purposes of an equitable analysis.

along with Dolphin. But the error had no practical significance given Delaney's handling of the proceeds. Had the trial court done what plaintiffs urged at the outset and made Dolphin the sole judgment creditor, only Dolphin would have received the funds, as in fact it did. Likewise, had the escrow instructions been followed correctly, the checks that issued to satisfy the judgment would have been made payable to Dolphin only and Dolphin would have received the funds, as in fact it did. Under either scenario, plaintiffs would have had no basis for seeking restitution from Delaney. By turning the funds over to Dolphin immediately, Delaney ensured that plaintiffs were placed in the same position they would have been in if the original judgment had been entered correctly. Given that practical outcome, it is equitable to leave plaintiffs with the same remedy as well—that is, restitution from Dolphin only.[5]

Affirmed.

---

[5] Plaintiffs assert that they are not in the same position because Dolphin is now insolvent. There is no evidence of that fact in the record and, at oral argument, the parties disagreed whether that was the case. Even assuming that Dolphin is insolvent, plaintiffs in effect would receive a windfall by being able to obtain restitution from a party who was not a proper judgment creditor and who immediately released the checks in payment of the judgment to the party that properly was. The mere fact that Delaney was a "middleman" in achieving what turned out to be the legally correct disbursement of the funds should not provide plaintiffs with additional resources to tap for purposes of repayment of the amounts that were erroneously paid to Dolphin.